FILED

2014 Dec-23  PM 01:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **JERRY SMITH,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **Case Number 3:13-cv-8002-SLB** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

This case is before the court on petitioner Jerry Smith's Motion to Vacate, Set

Aside, or Correct Sentence Pursuant to 28 U.S.C. 2255. (Doc. 1.)[1] Petitioner sought an

evidentiary hearing on his petition, (Docs. 9 and 17), and the court granted petitioner a

hearing on the sole issue of whether petitioner's counsel was ineffective for failing to

appeal petitioner's case within ten days of sentencing, as petitioner contends he

instructed counsel to do. Because petitioner's former counsel denied that petitioner

requested an appeal, the court held an evidentiary hearing on November 21, 2014 to

resolve credibility issues on this claim. (*See* Doc. 19 at 1 n. 2.) Upon review of the

record, the submissions of the parties, the relevant law, and the evidentiary hearing, the

---

[1] Reference to a document number, ("Doc. ___"), refers to the number assigned to each document as it is filed in the court's record. This Motion was originally filed in petitioner's underlying criminal case, (Doc. 36 in Case No. 3:11-cr-0283-SLB-HGD).

court finds that petitioner's claim is due to be denied. The court finds that petitioner's remaining claims, for which the court did not hold an evidentiary hearing, are also due to be denied.

## PROCEDURAL HISTORY

Petitioner was indicted on July 27, 2011 on six counts of knowingly transporting C.A., an individual who had not attained the age of 18 years, in interstate commerce, with the intent of engaging in sexual activity for which any person can be charged with a criminal offense, in violation of 18 U.S.C. § 2423(a). (Doc. 1 in Case No. 3:11-cr-283-SLB-HGD.)

Attorney Robert Tuten was originally appointed to represent petitioner, but the court granted Tuten's Motion to Withdraw as Counsel after petitioner retained attorney Casey Lott. On October 5, 2011, petitioner, with Lott as counsel, entered into a plea agreement with the government, in which he pled guilty to Counts Two, Three, and Four. (Doc. 21 at 1 in Case No. 3:11-cr-283-SLB-HGD.) The government agreed to dismiss Counts One, Five, and Six in exchange for petitioner's plea. (*Id.*) Petitioner agreed to the following factual basis for the plea:

> The victim in this case is C.P.A., DOB XX/XX/1995, residing in Red Bay, Alabama, which is in Franklin County. C.P.A. has known Jerry Smith her entire life, since he was friends with her birth father. Smith lives less than a mile from C.P.A.'s house. C.P.A. has dated his eighteen year old son in the past. Smith was employed as a long haul truck driver at the time of these crimes. Smith's DOB is XX/XX/1970.

In December 2010, C.P.A. accompanied Smith on a work-related trip to Texas. Smith asked C.P.A.'s mother if she objected. C.P.A.'s mother did not object since Smith promised her he would treat C.P.A. as he would his own child and that they could "trust him." The trip to Texas was three days and according to C.P.A. was uneventful. C.P.A. and Smith both slept in the sleeper compartment of the truck but under separate blankets.

Shortly after this trip, Smith and C.P.A. began texting each other. The texts became very frequent and were sexual in nature. C.P.A. believed the texts were sent by Smith in an attempt to determine whether or not C.P.A. would have sex with him.

On January 17, 2011, C.P.A. accompanied Smith on a trip to Indiana. On the way there, C.P.A. asked Smith to stop at a rest stop outside of Nashville, Tennessee, so that she could use the rest room. It was at this rest stop that they had sex in his truck. After the trip resumed, they stopped at another rest stop in Tennessee, just before the Kentucky state line. They had sex again during this stop. They did not stop in Kentucky but stopped in Indiana, just prior to arrival at their destination in Indianapolis. They had sex for a third time at this location. After driving back to Alabama, Smith dropped C.P.A. off at her home at midnight. Smith did not buy condoms during this trip because he already had some in the truck, however, he did use condoms during the above-described sex acts.

The age of consent in Indiana is 16. The age of consent in Tennessee is 18.

(Doc. 21 at 2-4 in Case No. 3:11-cr-283-SLB-HGD.)

As part of the plea agreement, petitioner agreed to waive the right to appeal, which petitioner acknowledged both Lott and the court explained to him. (*See* Doc. 30 at 8-9 in Case No. 3:11-cr-283-SLB-HGD.) The waiver read as follows:

IV. WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF

In consideration of the recommended disposition of this case, I, Jerry Smith, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up the right to challenge my conviction and/or

3

sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.

The defendant reserves the right to contest in an appeal or post-conviction proceeding either or both of the following:

(a) Any sentence imposed in excess of the applicable statutory maximum sentence(s); and

(b) Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed.

The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.

I, Jerry Smith, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.

(Doc. 21 at 6-7 in Case No. 3:11-cr-283-SLB-HGD.) Petitioner was sentenced to 120 months imprisonment. (Doc. 31 at 37 in Case No. 3:11-cr-283-SLB-HGD.) No appeal followed.

Petitioner filed the instant § 2255 Motion on February 7, 2013 and submitted an Amended Memorandum supporting the Motion on January 1, 2014, alleging that counsel was ineffective for three reasons: (1) for failing to appeal petitioner's case after being requested to do so by petitioner; (2) for coercing petitioner into pleading guilty to a crime he did not commit; and (3) for refusing to seek a withdrawal of petitioner's guilty plea.

(Doc. 6 at 2-4). Petitioner also argued that the victim's recantation in an affidavit, attached as an exhibit to petitioner's Amended Memorandum, proved that the victim's previous testimony regarding petitioner's criminal conduct was false, and thus, placed petitioner's conviction into question. (Doc. 6 at 5-6, 9.)

## DISCUSSION

### A. Ineffective Assistance: Failure to Appeal

Petitioner claims that he received ineffective assistance of counsel when his attorney, Casey Lott, failed to appeal as requested by petitioner. The court conducted an evidentiary hearing on this issue, hearing testimony from petitioner, petitioner's daughter and sister, and Lott. Based on the evidence and testimony, the court makes the following findings of fact on this issue.

Lott has been licensed to practice law for over nine years and has been practicing in federal courts throughout this time. After agreeing to represent petitioner, Lott reviewed the discovery and formed the opinion, which Lott communicated with petitioner, that the government had a very strong case. (Doc. 14-1 at 2.) Lott based his assessment on several text messages exchanged between petitioner and the victim that corroborated the victim's account of petitioner's criminal actions. (*Id.*) Additionally, Lott advised petitioner that if petitioner chose to proceed to trial, the government planned to file a superseding indictment adding a child pornography charge against petitioner. (*Id.* at 4.) Based on Lott's advice, petitioner agreed to plead guilty, and petitioner and the

government negotiated a plea agreement incorporating both the factual stipulation and waiver of appeal rights quoted above. Lott discussed the waiver with petitioner, and petitioner represented that he understood he was waiving his right to appeal.

Lott met with petitioner at petitioner's house to review the plea agreement with him. Although Lott does not specifically remember reviewing the page regarding waiver of appeal rights, Lott testified that his practice is to review every page of a plea agreement with his clients, and the court credits Lott's testimony on this point. At the plea hearing on October 5, 2011, the court addressed the appeal waiver with petitioner. The following exchange occurred:

> THE COURT: There's a section of the plea agreement that was referenced by the Assistant U.S. Attorney entitled "Waiver of Right to Appeal and Post-Conviction Relief." In this section of the plea agreement, you're giving up some important rights, and I want to go over them with you.
>
> First, you're waiving your right to appeal your conviction by way of a direct appeal or by way of what's called a habeas corpus petition subject to only two limitations: One, if I imposed a sentence that was in excess of the applicable statutory maximum sentence or if I imposed a sentence in excess of the Sentencing Guidelines range, you would reserve the right to appeal or to file a habeas corpus petition.
>
> But do you understand that with the exception of those two circumstances, you're giving up some important rights to appeal within this section of the plea agreement?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Have you discussed those rights with your attorney?
>
> THE DEFENDANT: Yes.

6

THE COURT: Mr. Lott, are you satisfied your client understands the right[s] he's giving up in this section of the plea agreement?

MR. LOTT: Yes, Your Honor.

THE COURT: Other than the plea agreement that we have just discussed, Mr. Smith, has anyone promised you anything or threatened you in any way in order to induce you to enter a plea of guilty?

THE DEFENDANT: No.

(Doc. 30 at 8-9 in Case No. 3:11-cr-283-SLB-HGD.)

The court accepted petitioner's guilty plea and set the sentencing hearing for April 6, 2012. (*Id.* at 17.) After the sentencing hearing, petitioner and Lott had a discussion, in which petitioner noted that, during the hearing, the court discussed his waiver of the right to appeal. Lott responded that this was correct and that he did not think petitioner had any grounds for appeal. Petitioner did not, at any time, request that Lott appeal his case.[2]

---

[2] Petitioner testified that, after the sentencing hearing, he asked Lott to appeal his sentence, and Lott responded that the case was "done." Petitioner's sister and daughter gave the same testimony as petitioner. The court does not credit this testimony for several reasons. First, it seems unlikely that petitioner would ask to appeal his case after receiving such a favorable sentence immediately prior. Lott made several objections to the Presentence Investigation Report on petitioner's behalf, and the court sustained all but one objection. (Doc. 31 at 11-17 in Case No. 3:11-cr-283-SLB-HGD.) As a result, petitioner's guideline range was reduced from 262-327 months to 87-108 months. (*Id.* at 18; *see also* Doc. 24 at 1 in Case No. 3:11-cr-283-SLB-HGD.) The court gave petitioner the minimum mandatory sentence and even requested that defendant be incarcerated at a facility as close to his home as possible. (Doc. 31 at 37, 43 in Case No. 3:11-cr-283-SLB-HGD.) Additionally, during the plea hearing, petitioner acknowledged that he voluntarily waived his right to appeal, except for the right to appeal a sentence in excess of either the statutory maximum sentence or the guideline imprisonment range. Second, petitioner knew that the government's case against him was very strong. He knew that the government had dropped three counts in exchange for his plea, that the government

7

Based on these findings of fact, the court finds that petitioner did not request an appeal either before or after the sentence was imposed. *Gomez-Diaz v. United States*, 433 F.3d 788 (11th Cir. 2005), explains the Supreme Court precedent governing this issue:

> The Court first reaffirmed the well-settled rule that an attorney who fails to file an appeal on behalf of a client who specifically requests it acts in a professionally unreasonable manner per se. The Court went on to hold that, even if a client has not made a specific request of his attorney to file an appeal, a court must inquire whether the attorney consulted with the client regarding the advantages and disadvantages of appealing and made a reasonable effort to determine the client's wishes. If so, the attorney has only acted unreasonably if he has ignored the client's wishes to appeal the case. If not, the court must further inquire whether the attorney had the affirmative duty to consult. An attorney has this duty when either (1) any rational defendant would want to appeal, or (2) his particular client reasonably demonstrated an interest in appealing.

433 F.3d at 791-92 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477-78, 120 S. Ct. 1029, 1035, 145 L.Ed.2d 985 (2000)) (internal citations omitted).

The court credits Lott's testimony that petitioner did not request or instruct counsel to appeal. Therefore, the next inquiry is whether Lott had a duty to consult with petitioner regarding an appeal. Lott did not consult with petitioner about appealing, and

---

would charge him with child pornography if he went to trial, and that the government possessed several incriminating text messages exchanged between himself and the victim. (*See* Doc. 14-1 at 2-4; Doc. 31 at 7-8 in Case No. 3:11-cr-283-SLB-HGD.) Lastly, Lott's work on petitioner's case suggests that Lott would not have refused to complete extra work on petitioner's behalf. For example, Lott encouraged petitioner to take a polygraph test to prove that petitioner was innocent, but petitioner refused. (Doc. 14-1 at 3.) Lott also hired an IT professional to examine petitioner's cell phone in the hope of finding exculpatory evidence, but the expert could not extract any messages from the phone because it was destroyed when petitioner gave the phone to Lott. (*Id.*) The court credits Lott's testimony on these matters.

this would violate Lott's duty as petitioner's counsel if either (1) a rational defendant under petitioner's circumstances would want to appeal, or (2) petitioner "reasonably demonstrated an interest in appealing." The court credits Lott's testimony that, after the sentencing hearing, he communicated that petitioner had no grounds for an appeal and that, after this conversation, petitioner did not raise the issue of appealing again. Because the court finds that petitioner did not "reasonably demonstrate[] an interest in appealing," the only issue is whether a rational defendant under the circumstances existing in petitioner's case would want to appeal.

"This inquiry is informed by several 'highly relevant' factors, including: whether the conviction follows a guilty plea, whether the defendant received the sentence he bargained for, and 'whether the plea [agreement] expressly . . . waived some or all appeal rights.'" *Otero v. United States*, 499 F.3d 1267, 1270 (11th Cir. 2007) (quoting *Flores-Ortega*, 528 U.S. at 480, 120 S. Ct. at 1036). Petitioner's case is comparable to *Devine v. United States*, 520 F.3d 1286, 1288 (11th Cir. 2008), in which the court found that counsel did not have a duty to consult on the issue of appealing. The court stated:

> In determining whether counsel had an affirmative duty to consult with Devine, we are guided by the above-mentioned, two-prong test set out in *Thompson*, quoting from *Flores-Ortega*. With respect to the first prong, we agree with the district court that a rational defendant in Devine's position would not want to appeal, because there were no nonfrivolous grounds for appeal. Devine had pled guilty, and there was no suggestion that the plea was invalid. Devine's plea included an appeal waiver, such that in these circumstances Devine would have had a viable appeal of his sentence only if the judge had imposed an illegal sentence. The record in this case reveals

9

that the sentence here, which was at the bottom of the guidelines, was not
an illegal sentence.

*Id.*

Here, Lott had no duty to consult with petitioner about an appeal because a

rational defendant under petitioner's circumstances would not want to appeal. In

response to petitioner's agreement to plead guilty, the government dismissed three

counts. Had petitioner gone to trial, the government was prepared to charge petitioner

with the possession and solicitation of child pornography and to introduce into evidence

several incriminating text messages. Additionally, Lott raised several objections to the

Presentence Report, and the court ruled in petitioner's favor on all but one objection.

Lott's successful objections resulted in petitioner's guideline range being reduced, and

the court gave petitioner the lowest possible sentence, which was the minimum

mandatory sentence of 120 months. Petitioner also validly waived his right to appeal and

acknowledged that he understood both Lott's and the court's explanation of the rights he

was waiving. Given the amount of incriminating evidence the government possessed, the

government's agreement to forego child pornography charges and dismiss three counts

against petitioner, and petitioner's voluntary waiver of his right to appeal, no rational

defendant would have wanted to appeal and risk losing the favorable sentence petitioner

received.

10

The court finds that petitioner did not instruct Lott to appeal and that Lott had no further duty to discuss an appeal with petitioner. Therefore, counsel did not render ineffective assistance, and petitioner's claim is due to be denied.

### B. Ineffective Assistance: Coercion Causing Petitioner to Plead Guilty

Petitioner contends that Lott coerced him into pleading guilty to a crime he did not commit by convincing petitioner "that he would be subject to a possible life sentence if he did not enter a plea of guilty." (Doc. 6 at 3.)

To evaluate the effectiveness of criminal defense counsel under the Sixth Amendment, courts look to the two-part test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The petitioner must first demonstrate that counsel's performance fell below "an objective standard of reasonableness," 466 U.S. at 688, and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Courts consider a guilty plea and the subsequent conviction to "comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569, 109 S. Ct. 757, 762, 102 L.Ed.2d 927 (1989). Thus, "when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *Id.*

11

Petitioner cannot show deficiency of counsel because petitioner's plea was both counseled and voluntary. First, petitioner stated to the court that he had sufficient time to discuss his charges with Lott. (Doc. 30 at 13 in Case No. 3:11-cr-283-SLB-HGD.) Not only did petitioner repeatedly affirm in court that he wanted to plead guilty, (Doc. 30 at 3, 4, 16-17 in Case No. 3:11-cr-283-SLB-HGD), but when asked by the court whether "anyone promised you anything or threatened you in any way in order to induce you to enter a plea of guilty," petitioner responded that no one had. (Doc. 30 at 9 in Case No. 3:11-cr-283-SLB-HGD.) The court accepted petitioner's guilty plea because it found that petitioner entered the plea "freely and voluntarily." (Doc. 30 at 17 in Case No. 3:11-cr-283-SLB-HGD.) Additionally, petitioner was subject to a possible life sentence whether he pled guilty or not. The court explained the sentencing range to petitioner, stating that he faced a sentence of "not less than ten years but not more than life." (Doc. 30 at 9 in Case No. 3:11-cr-283-SLB-HGD.) As petitioner has failed to introduce any evidence showing coercion, this claim is due to be denied.

### C. Ineffective Assistance: Failure to Move to Withdraw Plea

Petitioner contends that he "and his family" instructed Lott multiple times to withdraw petitioner's guilty plea and that, each time, Lott threatened petitioner with life imprisonment if petitioner withdrew the plea. (Doc. 6 at 4.)

Petitioner has not established an objectively deficient performance or prejudice from Lott's failure to move to withdraw petitioner's guilty plea. First, petitioner has not

12

shown that Lott's performance was deficient because, while petitioner claims that he

asked Lott to withdraw his guilty plea, the record belies petitioner's contention that he

made such a request. Lott testified that he does not recall petitioner ever making this

request. (Doc. 14-1 at 5.) In fact, petitioner had an opportunity in court to withdraw his

guilty plea:

> THE COURT: You are not required to enter a plea of guilty, and you are free
> at this time to withdraw your plea of guilty and re-enter a not guilty plea.
> Have you heard anything here today that causes you to want to reconsider
> your decision to enter a plea of guilty?
>
> THE DEFENDANT: No.
>
> THE COURT: Do you still desire to enter your plea of guilty to Counts Two,
> Three and Four of the indictment?
>
> THE DEFENDANT: Yes.

(Doc. 30 at 16-17 in Case No. 3:11-cr-283-SLB-HGD.)

Even if petitioner had proof of instructing Lott to withdraw the guilty plea,

petitioner cannot show that any failure by Lott prejudiced him under *Strickland*. Before

the sentencing phase, the court may permit a criminal defendant to withdraw a guilty plea

upon a showing that the defendant has a "fair and just reason." *United States v. Buckles*,

843 F.2d 469, 471 (11th Cir. 1988) (quoting Fed. R. Crim. P. 32(d)). "To determine

whether the defendant has given a fair and just reason for withdrawal, the district court

examines the totality of the circumstances, including: '(1) whether close assistance of

counsel was available; (2) whether the plea was knowing and voluntary; (3) whether

13

judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea.'" *United States v. Cesal*, 391 F.3d 1172, 1179 (11th Cir. 2004) (quoting *United States v. Freixas*, 332 F.3d 1314, 1318 (11th Cir. 2003)). Further, "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988).

Petitioner is not prejudiced by Lott's failure to move to withdraw petitioner's guilty plea because petitioner could not have succeeded on a motion to withdraw the plea. It is unlikely petitioner could have met the burden to show that his statements at the plea colloquy, indicating that petitioner's plea was counseled, knowing, and voluntary, were false. Additionally, as the government argues, leaving a counseled and voluntary plea intact conserves judicial resources. (*See* Doc. 14 at 7.) Because the government does not provide evidence that it would be prejudiced by petitioner withdrawing his guilty plea, the court will not consider this factor in its analysis.

For the foregoing reasons, petitioner's claim that his counsel was ineffective for failure to move to withdraw petitioner's guilty plea is due to be denied.

### D. Recantation of the Victim's Testimony

Petitioner requested a hearing to determine whether a recantation by the victim was truthful. Petitioner attached an affidavit from September 27, 2013 to his Amended

14

Memorandum, in which the victim stated that she never had sexual contact with

petitioner. (Doc. 6 at 9.)

In another case involving a recantation letter, the court found that the recantation

testimony was not credible and did not warrant an evidentiary hearing:

> Recantation testimony is properly viewed with great suspicion. It upsets society's interest in the finality of convictions, is very often unreliable and given for suspect motives, and most often serves merely to impeach cumulative evidence rather than to undermine confidence in the accuracy of the conviction. *Dobbert v. Wainwright*, 468 U.S. 1231, 1233–34, 105 S.Ct. 34, 82 L.Ed.2d 925 (1984) [(internal quotations omitted)]; *accord United States v. Santiago*, 837 F.2d 1545, 1550 (11th Cir.1988) (noting that "recantations are viewed with extreme suspicion by the courts"). Moreover, the Eleventh Circuit has found that an unsworn letter is less reliable than testimony offered under oath or provided in an affidavit. *Melson v. Allen*, 548 F.3d 993, 1003 (11th Cir.2008) (noting that statements not in the form of an affidavit are less reliable); *Milton v. Secretary, Department of Corrections*, 2009 WL 3150246, [at] *3 (11th Cir. Oct.1, 2009) (calling into question the reliability of a hand-written letter which recanted prior testimony). In general, a witness' recantation of trial testimony will justify a new trial only where the reviewing judge is satisfied that the recantation is true and that it will likely result [in] a different verdict. *See Dobbert*, at 1234 (citing *Brown v. State*, 381 So.2d 690, 692–693 (Fla.1980)).

*Bannister v. U.S.*, No. 08-81228-CIV, 2009 WL 3561697, at *7 (S.D. Fla. Oct. 30,

2009).

While the victim did recant her initial testimony, she subsequently met with FBI

Agent Patrick Stokes in person on February 27, 2014 and gave statements in an affidavit

that her cousin offered her marijuana and pressured her to make the false recantation.

(Doc. 14-2 at 2-3.) Specifically, she stated that her cousin dictated the affidavit and that

the statements she wrote on September 27, 2013 are "completely false." (*Id.*) The victim

even attempted to get the September 2013 affidavit back, but her cousin claimed not to know its location. (*Id.* at 3.) Not only is the February 2014 affidavit persuasive, but the inculpatory nature of the text messages sent between petitioner and the victim make it highly unlikely that the victim's recantation is truthful.

As the court finds that the victim's recantation testimony is not credible, this claim is due to be denied.

## CONCLUSION

Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. 2255, (Doc. 1), will be denied as to all claims. An order denying petitioner's § 2255 Motion will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 23rd day of December, 2014.


SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE